IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| DISABILITY RIGHTS TEXAS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-00124-H |
| | § | |
| RICKY BISHOP, IN HIS OFFICIAL | § | |
| CAPACITY AS THE SHERIFF OF | § | |
| TAYLOR COUNTY, | § | |
| | § | |
| *Defendant.* | § | |

---

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

BETH L. MITCHELL
State Bar No. 00784613
bmitchell@drtx.org

LISA SNEAD
*Admitted Pro Hac Vice*
State Bar No. 24062204
lsnead@drtx.org
DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Austin Office)
(512) 454-3999 (Austin Fax)

COURTNEY LUTHER
*Admitted Pro Hac Vice*
State Bar No. 24101063
cluther@drtx.org
DISABILITY RIGHTS TEXAS
1500 McGowen St., Suite 100
Houston, Texas 77004
(713) 974-7691 (Houston Office)
(713) 974-7695 (Houston Fax)

---

**ATTORNEYS FOR PLAINTIFF**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I. SUMMARY OF ARGUMENT ................................................................................ 1

II. STANDARD OF REVIEW ..................................................................................... 2

III. STATEMENT OF MATERIAL FACTS............................................................... 2

IV. ARGUMENT AND AUTHORITIES...................................................................... 4

   A. THE HISTORY OF THE P&A SYSTEM ESTABLISHES THE BASIS FOR DRTX'S AUTHORITY TO ACCESS OTHERWISE CONFIDENTIAL JAIL RECORDS............................................................... 4

   B. THE PLAIN LANGUAGE OF THE P&A ACTS, THEIR REGULATIONS, AND CASE LAW ESTABLISHES THAT DRTX IS ENTITLED TO THE VIDEO RECORDS AT ISSUE AS A MATTER OF LAW. ..................... 6

      1. *Under the P&A Acts, DRTx is entitled to access all records of persons with disabilities when the individual has authorized DRTx to do so, as B.W. has done in this case*............... 6

      2. *The plain language and regulations governing the P&A Acts unequivocally include videos within the types of records DRTx is entitled to access*............................................................ 8

      3. *Federal courts and agencies consistently read the P&A Acts to include video and correctional records, consistent with the plain language of the Acts and their regulations.* 10

   C. DRTX'S SPECIAL RIGHT OF ACCESS TRUMPS CONFLICTING STATE LAW ................................. 12

   D. DRTX'S DUTY TO MAINTAIN RECORDS' CONFIDENTIALITY WEIGHS IN FAVOR OF DISCLOSURE. ............................................................................................................................... 14

   E. DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY; THUS DRTX IS ENTITLED TO SUMMARY JUDGMENT. ................................................................................................................................. 16

   F. DRTX IS ENTITLED TO A PERMANENT INJUNCTION REQUIRING DEFENDANT TO DISCLOSE VIDEO RECORD TO DRTX WHERE DRTX WILL SUFFER IRREPARABLE HARM IF ITS FEDERAL MANDATES ARE INTERFERED WITH AND THERE IS NO OTHER ADEQUATE REMEDY, THERE IS NO HARM TO DEFENDANT, AND IT IS IN THE PUBLIC'S INTEREST. ................................................. 17

      1. *Standard for issuing a permanent injunction* ...................................................... 17

      2. *Defendant's conduct has irreparably harmed DRTx and there is no other adequate remedy at law besides the prayed-for injunction.*................................................................................ 17

      3. *Balancing the burdens on each party and considering the public interest favors the court's granting DRTx's request.*....................................................................................................... 19

CONCLUSION.................................................................................................................. 21

CERTIFICATE OF SERVICE ....................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Advocacy, Inc. v. Adelaide Horn, et al.*,
   Civil No. A-08-CA-071-LY, 2009 WL 10698769 (W.D. Tex. March 26, 2009) ............ 14

*Amoco Production Co. v. Village of Gambell, AK*,
   480 U.S. 531 (1987) ................................................................................................. 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................... 2

*Chrissy F. by Medley v Miss. Dept. of Public Welfare*,
   925 F.2d 844 (5th Cir. 1991) .................................................................................... 16

*Ctr. for Legal Advocacy v. Hammons*,
   323 F.3d 1262 (10th Cir. 2003) ................................................................................ 14

*Disability Rights N.Y. v. Wise*,
   171 F.Supp.3d 54 (N.D.N.Y. 2016) ..................................................................... 11, 12

*Disability Rights Ohio v. Buckeye Ranch*,
   375 F.Supp.3d 873 (S.D. Ohio 2019) ............................................................ 11, 18, 20

*Disability Rights Wisconsin, Inc. v. State of Wisconsin Department of Public Instruction*,
   463 F.3d 719 (7th Cir. 2006) .................................................................................... 15

*Dufrene v. Browning-Ferris, Inc.*,
   207 F.3d 264 (5th Cir. 2000) .................................................................................... 10

*Dunn v. Dunn*,
   163 F. Supp. 3d 1196 (M.D. Ala. 2016) ...................................................................... 5

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
   575 U.S. 768 (2015) ................................................................................................... 7

*eBay Inc., et al. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ................................................................................................. 17

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990) ..................................................................................................... 6

*Fontenot v. Upjohn*,
   780 F.2d 1190 (5th Cir. 1986) .................................................................................... 2

*Hamilton v. United Healthcare of Louisiana, Inc.*,
    310 F.3d 385 (5th Cir. 2002) ......................................................... 8

*Iowa Prot. & Adv. Servs. v. Rasmussen*,
    206 F.R.D. 630 (S.D. Iowa 2001) ................................................. 18

*K-Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988) ...................................................................... 6

*Leggett v. Duke*,
    279 F.App'x 301 (5th Cir. 2008) ................................................ 16

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, et al.*,
    523 U.S. 26 (1998) ........................................................................ 9

*MCI Telecomm. Corp. v. AT&T Co.*,
    512 U.S. 218 (1994) ...................................................................... 8

*Miss. Prot. & Advocacy Sys., Inc. v. Cotten*,
    929 F.2d 1054 (5th Cir. 1991) ...................................................... 5

*Nationsbank, N.A. v. Variable Annuity Life Ins.*,
    513 U.S. 251 (1995) .................................................................... 10

*Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*,
    266 F.Supp.2d 303 (D. Conn. 2003) .................................. 13, 15, 19

*Penn. Prot. & Advocacy, Inc. v. Houstoun*,
    228 F.3d 423 (3d Cir. 2000) ................................................ 14, 15

*Perrin v. United States*,
    444 U.S. 37 (1979) ........................................................................ 8

*Robbins v. Budke*,
    739 F.Supp. 1479 (D.N.M. 1990) ............................................... 15

*Shell Oil Co. v. Fed. Energy Admin.*,
    400 F. Supp. 964 (S.D. Tex. 1975), *aff'd*, 527 F.2d 1243 (Temp. Emer. Ct. App. 1975).. 8

*The Advocacy Ctr. v. Stalder*,
    128 F. Supp. 2d 358 (M.D. La. 1999) .............................. 5, 6, 19, 20

*U.S. v. Mead Corp.*,
    533 U.S. 218 (2001) .................................................................... 10

*Wisc. Coalition for Advocacy, Inc. v. Czaplewski*,
    131 F.Supp.2d 1039, 1052 (E.D. Wisc. 2001) ...................... 14, 20

**Constitutional Provisions**

U.S. Const. Art. IV, ¶ 2 .......................................................................................... 13

**Statutes**

42 C.F.R. § 51.31(i) ............................................................................................ 1, 13

42 U.S.C. § 10801(a)(1) .................................................................................... 5, 20

42 U.S.C. § 10801(a)(3) .................................................................................... 5, 20

42 U.S.C. § 10801(a)(4) .................................................................................... 5, 20

42 U.S.C. § 10802(1)(C) – (D) ............................................................................... 3

42 U.S.C. § 10802(3)-(4) ........................................................................................ 6

42 U.S.C. § 10805(a)(1) .......................................................................................... 5

42 U.S.C. § 10805(a)(1)(A) ..................................................................................... 2

42 U.S.C. § 10805(a)(4) ................................................................................. 1, 5, 8

42 U.S.C. § 10805(a)(4)(A) .................................................................................. 6, 7

42 U.S.C. § 10805(a)(4)(B) .................................................................................. 6, 7

42 U.S.C. § 10805(a)(4)(B)(iii) ................................................................................ 7

42 U.S.C. § 10805(a)(4)(C) .................................................................................. 6, 7

42 U.S.C. § 10806 ................................................................................................... 5

42 U.S.C. § 10806(a) ................................................................................... 1, 14, 15

42 U.S.C. § 10806(b)(2)(C) ................................................................................... 13

42 U.S.C. § 10806(b)(3)(A) ..................................................................................... 9

42 U.S.C. § 10826(b) ............................................................................................. 10

42 U.S.C. § 15001(a)(5) ........................................................................................ 20

42 U.S.C. § 15043(a)(1) .......................................................................................... 5

42 U.S.C. § 15043(a)(2)(B) ..................................................................................... 2

42 U.S.C. § 15043(a)(2)(I) ........................................................................... 8

42 U.S.C. § 15043(a)(2)(I) –(J) ................................................................... 5

42 U.S.C. § 15043(a)(2)(I)(i) ................................................................... 6, 7

42 U.S.C. § 15043(a)(2)(I)(ii) .................................................................. 6, 7

42 U.S.C. § 15043(a)(2)(I)(iii) ................................................................ 6, 7

42 U.S.C. § 15043(c) ................................................................................ 5, 9

42 U.S.C. § 1983 .................................................................................... 16, 17

Tex. Health & Safety Code § 615.002(a) .................................................. 13

## Regulations

42 C.F.R. § 51.31(i) .................................................................................. 1, 13

42 C.F.R. § 51.41(c) ...................................................................................... 9

42 C.F.R. § 51.42(b) .................................................................................... 15

42 C.F.R. § 51.42(c) .................................................................................... 16

42 C.F.R. § 51.45(a)(1) .......................................................................... 14, 15

45 C.F.R. § 1326.19 ...................................................................................... 3

45 C.F.R. § 1326.21(f) ............................................................................. 1, 13

45 C.F.R. § 1326.25(b) .................................................................................. 9

45 C.F.R. §1326.27(c) ............................................................................ 15, 16

45 C.F.R. § 1326.28(a)-(b) ..................................................................... 14, 15

## Treatises

ANTONIN SCALIA AND BRYAN A. GARNER, READING THE LAW: INTERPRETATION OF LEGAL TEXTS
116 (2012) ............................................................................................ 7, 9

## Other Authorities

S. Rep. 100-454 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3217 .................................... 5

S. Rep. 99-109 (1985), *reprinted in* 1986 U.S.C.C.A.N. 1361 ........................................ 1, 4, 5, 14

SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION; REQUIREMENTS
      APPLICABLE TO PROTECTION AND ADVOCACY OF INDIVIDUALS WITH MENTAL ILLNESS;
      Final Rule, 62 Fed. Reg. 53548 (Oct. 15, 1997) ................................................................ 10

Tex. Att'y. Gen. Op. JC-0461, 2002 WL 199727 (2002) ............................................... 1

**Case Filings**

Department of Justice Statement of Interest,
      *Disability Rights Arkansas v. Graves*,
      4:20-CV-01081, ECF. No. 18 (E.D. Ark. February 10, 2021) ........................................ 12

Department of Justice Statement of Interest,
      *In Re Matter of Disability Rights Idaho, Inc. v. Erwin Sonnenberg*,
      1:14-cv-00369, ECF No. 40 (D. Idaho July 20, 2015) ..................................................... 12

Order denying Defendant's Motions to Dismiss,
      *Disability Rights Arkansas v. Graves*,
      4:20-CV-01081, ECF. No. 21 (E.D. Ark. May 5, 2021) ................................................... 12

Statement of Interest of the United States of America,
      *Georgia Advocacy Office, Inc. v. Frank Shelp*,
      1:09-cv-2880, ECF No. 47 (N.D. Ga. June 25, 2010) ..................................................... 12

Statement of Interest of the United States,
      *Disability Rights New York v. New York State Department of Corrections
      and Community Supervision and Anthony J. Annucci*,
      1:18-00980, ECF No. 62 (N.D. N.Y. March 30, 2020) ................................................... 12

# I.   <u>SUMMARY OF ARGUMENT</u>

Plaintiff Disability Rights Texas ("DRTx") submits this brief in support of its Motion for Summary Judgment against Defendant Sheriff Ricky Bishop, acting in his official capacity, for violating DRTx's federal right to access video records of an individual with a mental illness (B.W.) in a mechanical restraint while in the Taylor County Detention Center ("Detention Center"). Defendant's conduct has prevented and is preventing DRTx from conducting its federally-mandated investigation into alleged abuse and neglect of an individual with a disability.

DRTx is entitled to the requested video records based on its federal Protection and Advocacy ("P&A") authority. These authorities, the Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act, [1] the Protection and Advocacy for Persons with Developmental Disabilities (PADD) Act, [2] and the Protection and Advocacy for Individual Rights (PAIR) Act[3] (collectively known as the "P&A Acts"), create a special right of access that entitles DRTx to records otherwise considered confidential by state law. 42 U.S.C. §§ 10805(a)(4) and 10806(a); 42 U.S.C. § 15043(a)(2)(I)-(J); 42 C.F.R. § 51.31(i) ("State law must not diminish the required authority" of the P&A system), 45 C.F.R. § 1326.21(f) (same); *see also* S. Rep. 99-109, at 10 (1985);[4] Tex. Att'y. Gen. Op. JC-0461, 2002 WL 199727, *2 (2002).[5] The unambiguous language of the P&A Acts, the purpose of the Acts, and courts' interpretations of the Acts all conclusively establish that videos of restraints of persons with mental illness in jails are precisely the kind of records DRTx is entitled to access as part of an investigation.

---

[1] 42 U.S.C. § 10801, *et seq.*
[2] 42 U.S.C. § 15041, *et seq.*
[3] 29 U.S.C. § 794e. Because the PAIR Act provides that DRTx has "the same general authorities, including the authority to access records…as are set forth in" the PADD Act, references throughout are made only to the PAIMI and PADD Acts.
[4] *Reprinted in* 1986 U.S.C.C.A.N. 1361, 1370.
[5] At the time the Texas Attorney General's Office issued this opinion, DRTx was known as "Advocacy, Inc."

As DRTx meets the federal statutory requirements for accessing the requested video records and there are no genuine issues of material fact with respect to DRTx's claims, DRTx is entitled to its requested declaratory and injunctive relief as a matter of law.

## II.      STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of issue of material fact. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). The substantive law applicable to the case determines what facts are and are not material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Factual disputes regarding immaterial maters should be disregarded; only genuine issues of material fact preclude summary judgment. *Id.* In deciding whether summary judgment is appropriate, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## III.      STATEMENT OF MATERIAL FACTS

DRTx is the designated P&A organization for the State of Texas and is mandated, pursuant to the P&A Acts, to investigate complaints of abuse and/or neglect of persons with disabilities as well as incidents where its staff have probable cause to believe abuse or neglect of a person with a disability may have occurred. Agreed Joint Report (Doc. # 18) at § 2(J)(i)-(iii); Defendant's Answer (Doc. # 14) at ¶ 8 ("Admit the role of the Plaintiff"), ¶ 12 (admitting DRTx is the designated P&A organization for Texas); 42 U.S.C. § 10805(a)(1)(A); 42 U.S.C. § 15043(a)(2)(B).

2

DRTx received a complaint in October 2020 that the Detention Center officers inappropriately restrained B.W., an inmate with mental illness, on or about September 27, 2020. Agreed Joint Report (Doc. # 18) at § 2(J)(xv), (xvi), (xviii), (xix). An inappropriate restraint is defined as abuse under the P&A Acts.[6] Defendant Ricky Bishop is the Sheriff of Taylor County and is the administrator of the Taylor County Sheriff's Department and Detention Center deputies, jailors, jail employees and contractors. *Id*. at § 2(J)(iv), (v), (vii); Defendant's Answer (Doc. # 14) at ¶ 9. He was and still is responsible for the oversight and management of the Detention Center. Agreed Joint Report (Doc. # 18) at § 2(J)(viii); Defendant's Answer (Doc. # 14) at ¶ 9. At the time the Detention Center deputies restrained him, B.W. was receiving mental health services at the Detention Center. Agreed Joint Report (Doc. # 18) at § 2(J)(xv)-(xviii). In accordance with its statutory mandate, DRTx opened an investigation into the alleged abuse of B.W.

Soon after learning of the report of the inappropriate restraint, on October 30, 2020, DRTx requested via email that the Taylor County Sheriff's Department preserve all video footage of B.W. in the restraint, including a few minutes before the restraint was applied and after he was released from the restraint.[7] On November 5, 2020, Sergeant Kevin Henry responded, confirming that seventy minutes of video of the restraint existed and had been preserved.[8] On December 3,

---

[6] "[T]he use of excessive force when placing an individual with mental illness in bodily restraints and the use of bodily . . .restraints on an individual with mental illness which is not in compliance with Federal and State laws and regulations," is considered abuse under the P&A Acts. *See* 42 U.S.C. § 10802(1)(C) – (D); *see also* 45 C.F.R. 1326.19 (definition of "abuse")(defining abuse of persons with intellectual and developmental disabilities to include use of excessive force when placing an individual in restraints and the use of restraints which is not in compliance with Federal and State laws and regulations).

[7] Ex. A, DRTx's October 30, 2020 Email and Letter Request to Sharon Young-Brazell to Preserve Video. Exhibits A, B, C, and D have been redacted to remove B.W.'s name and other identifying protected health information. B.W.'s identity is not material to the case and he has been referred to as B.W. by both parties throughout the litigation. *See e.g.* Plaintiff's Original Complaint (Doc. # 1), Defendant's Certificate of Interested Parties (Doc. # 15), Agreed Joint Report (Doc. # 18) at § 2(j). If the Court requires it, DRTx can provide unredacted documents under seal.

[8] Ex. B, Defendant's November 5, 2020 Email Response from Sgt. Kevin Henry to DRTx Regarding Video.

2020, B.W. executed a release of information for DRTx to access all of his health and mental health information as well as his entire jail file/records.[9]

On January 6, 2021, in furtherance of its investigation and pursuant to its federal P&A authority, DRTx provided the Detention Center with B.W.'s signed release of information and requested B.W.'s jail record including, but not limited to, his entire jail medical record, his entire jail mental health record, and the seventy minutes of video of the restraint the Taylor County Sheriff's Department previously confirmed existed. Agreed Joint Report (Doc. # 18) at § 2(J)(xx); Defendant's Answer (Doc. # 14) at ¶ 15; *see also* Exhibit D.[10] Defendant produced B.W.'s jail, medical, and mental health records, but refused to provide DRTx with the requested video of the incident. Agreed Joint Report (Doc. # 18) at § 2(J)(xxi); Defendant's Answer (Doc. # 14) at ¶ 16.

Because none of the foregoing material facts are in dispute and the law as set forth below establishes DRTx's right to the video records, this Court should award DRTx summary judgment as a matter of law as to both its prayed-for declaratory and injunctive relief.

## IV.   ARGUMENT AND AUTHORITIES

### A.   THE HISTORY OF THE P&A SYSTEM ESTABLISHES THE BASIS FOR DRTX'S AUTHORITY TO ACCESS OTHERWISE CONFIDENTIAL JAIL RECORDS.

Congress enacted the P&A Acts and charged P&As with their duties following extensive congressional investigations into conditions affecting persons with mental illness and developmental disabilities that uncovered pervasive and rampant abuse of these persons. S. Rep. No. 99-109 at 2-3, (1985).[11] Specifically, Congress found that "individuals with mental illness are vulnerable to abuse and serious injury" and are "subject to neglect, including lack of treatment . .

---

[9] Exhibit C, Release of Information signed by B.W. on December 3, 2020 for DRTx to access all of his records, including mental health records, from the Taylor County Sheriff's Office.
[10] January 6, 2021 Request from DRTx to Defendant to produce B.W.'s records.
[11] *Reprinted in* 1986 U.S.C.C.A.N. 131, 1362-63.

. [and] healthcare." 42 U.S.C. § 10801(a)(1), (3). Based on these findings, Congress mandated that P&A systems investigate abuse, neglect, injury, and deaths of persons with disabilities. 42 U.S.C. § 10805(a)(1). When enacting the PAIMI Act, Congress explicitly found that other systems were inadequate to investigate, monitor, and protect the rights of individuals with mental illness. 42 U.S.C. § 10801(a)(4); *see also* S. Rep. No. 99-109, at 4, 7 (1985).[12] When the PAIMI Act was reauthorized a few years later, the Senate Committee on Labor and Human Resources heard testimony specifically regarding the abuse of people with mental illness in jails and stressed that individuals in jails were already eligible for services from the P&A systems under the original PAIMI Act. S. Rep. 100-454, at 9-10 (1988).[13]

As the P&A system for the State of Texas, DRTx's federal mandate is not simply pro forma, rather it must operate as an effective protection and advocacy system for those with disabilities in the State. *See Miss. Prot. & Advocacy Sys., Inc. v. Cotten*, 929 F.2d 1054, 1058 (5th Cir. 1991).[14] Congress thus equipped P&As like DRTx to effectively fulfill their investigative mandate by providing them with "unfettered access to 'all records'" of persons with disabilities, a tool "critical to the efficacy of efforts to protect and advocate" for individuals with disabilities. *Dunn v. Dunn*, 163 F. Supp. 3d 1196, 1211-12 (M.D. Ala. 2016); 42 U.S.C. §§ 10805(a)(4), 10806; 42 U.S.C. § 15043(a)(2)(I) –(J), (c). After all, "[t]he authority to investigate would mean nothing and advocacy in the form of investigation would be ineffective if federal law would not preempt" state laws and

---

[12] *Reprinted in* 1986 U.S.C.C.A.N. 1361, 1364, 1367.

[13] *Reprinted in* 1988 U.S.C.C.A.N. 3217, 3225-26.

[14] The court in *Mississippi Protection & Advocacy System, Inc. v. Cotten* was examining the language of 42 U.S.C. § 6042, a predecessor of the PADD Act which was repealed on October 30, 2000, that stated: "the State must have *in effect* a system to protect and advocate the rights of persons with developmental disabilities." The court reasoned that use of the term "in effect" describes the barebones minimum required of the state system; therefore, the system must be an effective system. In its current form, the PADD Act still states: "the State shall have *in effect* a system to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. § 15043(a)(1) (emphasis added). *See also, The Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 367 (M.D. La. 1999) ("The PAIMI Act requires an 'effective' system of advocacy.'").

policies restricting the P&A system's access to records. *The Advocacy Ctr. v. Stalder*, 128 F. Supp. 2d 358, 367 (M.D. La. 1999).

**B.    THE PLAIN LANGUAGE OF THE P&A ACTS, THEIR REGULATIONS, AND CASE LAW ESTABLISHES THAT DRTX IS ENTITLED TO THE VIDEO RECORDS AT ISSUE AS A MATTER OF LAW.**

> **1.    *Under the P&A Acts, DRTx is entitled to access all records of persons with disabilities when the individual has authorized DRTx to do so, as B.W. has done in this case.***

The P&A Acts provide three distinct times when DRTx is entitled to access a person's records: with the individual's or guardian's consent,[15] when the individual does not have a guardian but is unable to consent or has a State guardian,[16] and when the individual does have a guardian but the guardian will not consent to access the records.[17] In the instant case, DRTx sought access to B.W.'s records under the first provision —with B.W.'s consent.

The first records provision of the PAIMI Act—42 U.S.C. § 10805(a)(4)(A)—clearly states that the P&A "shall . . . have access to all records of any individual who is a client of the system if such individual . . . has authorized the system to have such access." The plain language of this provision does not require DRTx to provide any additional information before an entity is required to turn over records to the P&A.[18] DRTx's request for the records related to the alleged abuse of B.W. by the Detention Center meets these requirements. The PAIMI Act applies to individuals with mental illness who are in a facility rendering care or treatment, including those in jail. 42 U.S.C. § 10802(3)-(4). B.W. is a person with mental illness and B.W. was in the Detention Center

---

[15] 42 U.S.C. § 10805(a)(4)(A); 42 U.S.C. § 15043(a)(2)(I)(i).
[16] 42 U.S.C. § 10805(a)(4)(B); 42 U.S.C. § 15043(a)(2)(I)(ii).
[17] 42 U.S.C. § 10805(a)(4)(C); 42 U.S.C. § 15043(a)(2)(I)(iii).
[18] When interpreting a statute, courts should first look to the plain language of the statute itself as it is presumed that Congress expresses its intent through the ordinary meaning of its language. *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990), *quoting Park n Fly, Inc. v. Dollar Park and Fly, Inc*., 469 U.S. 189, 194 (1985)("[We] begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."); *K-Mart Corp. v. Cartier, Inc*., 486 U.S. 281, 291 (1988)("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue.").

where he was specifically receiving mental health services. Agreed Joint Report (Doc. # 18) at § 2(J)(xv)-(xvii). DRTx invoked this provision when its staff made the request to the Detention Center pursuant to B.W.'s signed release. Agreed Joint Report (Doc. # 18) at § 2(J)(xx), *see also* Exhibit D.

Unlike 42 U.S.C. § 10805(a)(4)(A) and 42 U.S.C. § 15043(a)(2)(I)(i), the next two provisions do require DRTx to provide additional information, albeit minimal, before an entity is required to turn over records. 42 U.S.C. § 10805(a)(4)(B) and 42 U.S.C. § 15043(a)(2)(I)(ii) apply to an individual without a guardian who is unable to provide consent or who has a State guardian, while 42 U.S.C. § 10805(a)(4)(C) and 42 U.S.C. § 15043(a)(2)(I)(iii) apply to an individual with a guardian who refuses to provide DRTx with consent.[19] When DRTx requests records under these provisions there needs to be " . . . a complaint . . . received by the system or . . . there is probable cause to believe that such individual has been subject to abuse or neglect." 42 U.S.C. § 10805(a)(4)(B)(iii), *see also id.* at (a)(4)(C); 42 U.S.C. § 15043(a)(2)(I)(ii) – (iii).[20]

Congress thus knew how to require a P&A system to articulate additional information in order to access records when it wanted the system to do so, as demonstrated by 42 U.S.C. § 10805(a)(4)(B), (C) and 42 U.S.C. § 15043(a)(2)(I)(ii), (iii). Where Congress did not include these additional requirements in order to access records under 42 U.S.C. § 10805(a)(4)(A), a court must "construe [a statute's] silence as exactly that: silence." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774 (2015). An intentional omission of a word or phrase is evidence that Congress did not intend to grant a requirement, which the inclusion of the word or phrase

---

[19] These provisions could not apply in this case, as B.W. did not have a guardian; instead they are included to show Congress's intent to not require additional information when an individual has authorized the P&A system to have access.

[20] The use of the disjunctive canon "or" means that at least one of the things in the list is required, but any one satisfies the requirement. ANTONIN SCALIA AND BRYAN A. GARNER, READING THE LAW: INTERPRETATION OF LEGAL TEXTS 116 (2012).

would have given. *Shell Oil Co. v. Fed. Energy Admin.*, 400 F. Supp. 964, 968 (S.D. Tex. 1975), *aff'd*, 527 F.2d 1243 (Temp. Emer. Ct. App. 1975).

In the instant case, it is undisputed that B.W. has executed a signed release of information and that DRTx's request to the Detention Center was made pursuant to B.W.'s signed release. Agreed Joint Report (Doc. # 18) at § 2(J)(xx); *see also* Exhibit C. In light of the plain language of the PAIMI Act, DRTx is therefore entitled to "have access to all records of [B.W.]" and is not required to make any further showing.

### 2. *The plain language and regulations governing the P&A Acts unequivocally include videos within the types of records DRTx is entitled to access.*

Having demonstrated that DRTx is entitled to access B.W.'s records as a matter of law, the only remaining question is whether video records are among the types of records a P&A is entitled access; the plain language of the P&A Acts and regulations as interpreted by courts and federal agencies establishes unequivocally that they are. Under the PAIMI Act, DRTx is entitled to "all records" of B.W. 42 U.S.C. § 10805(a)(4); *see also* 42 U.S.C. § 15043(a)(2)(I) (same).

Looking first to the meaning of "all," fundamental canons of statutory construction instruct that in the absence of a statutory definition, courts give terms their ordinary meaning. *Perrin v. United States*, 444 U.S. 37, 42 (1979); *Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 391 (5th Cir. 2002). To help clarify the ordinary meaning of words, it is common practice to consult dictionary definitions. *MCI Telecomm. Corp. v. AT&T Co.,* 512 U.S. 218, 225 (1994).The ordinary meaning of "all" means "the whole amount, quantity, or extent of." MERIAM WEBSTER DICTIONARY, *Definition of "All"* (2021).[21] Further, when determining words' meanings, "[o]ne should assume the contextually appropriate ordinary meaning unless there is reason to think

---

[21] *Available at* https://www.merriam-webster.com/dictionary/all.

otherwise."[22] Thus, congressional use of the word "all" to describe the scope of the P&As' authority to access records plainly evinces its intent that DRTx have access to "the whole amount" or entirety of B.W.'s records regarding the restraint on September 27, 2020.

Turning to the word "records," the PAIMI Act itself provides guidance on the types of documents and media that constitute "records" that P&As are entitled to access. Under the PAIMI Act,

> "records" includes reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records.

42 U.S.C. § 10806(b)(3)(A); *see also* 42 U.S.C. § 15043(c) (similar definition under the PADD Act). The ordinary meaning of the word "report" is "a written or spoken description of a situation, event, etc." MERIAM WEBSTER DICTIONARY, *Definition of "Report"* (2021).[23] The video of the Detention Center deputies restraining B.W. is a recorded "description" of his restraint and is thus a "report prepared by any staff" of a facility rendering care and treatment. Because the video is a "report," it is a record to which DRTx is entitled access. *Id.; see also* Agreed Joint Report (Doc. # 18) at § 2(J)(xxi) (referring to the video at issue as a "video record").

This reading of the ordinary meaning of the word "record" is consistent with the PAIMI Act regulations which explicitly state that records a P&A "shall"[24] have access to include video records. 42 C.F.R. § 51.41(c); 45 C.F.R. § 1326.25(b). Where Congress expressly delegated to the Secretary of the Health and Human Services Commission the authority to promulgate regulations

---

[22] SCALIA AND GARNER, *supra* fn. 20 at 69.

[23] *Available at* https://www.merriam-webster.com/dictionary/report.

[24] The use of the word "shall" in the PAIMI Act places a mandatory duty upon an entity to provide records to DRTx upon receipt of a signed release under 42 U.S.C. § 10805(a)(4)(A). *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, et al.*, 523 U.S. 26, 35 (1998) ("The Panel's instruction comes in terms of the mandatory 'shall,' which normally creates an obligation impervious to judicial discretion.").

to carry out the PAIMI Act, 42 U.S.C. § 10826(b), the agency's interpretations are entitled to deference. *See Dufrene v. Browning-Ferris, Inc.*, 207 F.3d 264, 267-268 (5th Cir. 2000).[25] This inclusion of video records by the Department of Health and Human Services ("DHHS") was no accident. When HHSC published the final rule in 1997, they explicitly added that video records should be "considered under the current meaning of 'records'" after careful consideration of comments submitted regarding the need of P&A systems to have video records in order to conduct an effective investigation.[26]

Because DRTx is entitled to access B.W.'s records with his consent as a matter of law and because the video of B.W.'s restraint is clearly a "record" under the plain language of the P&A Acts and regulations, DRTx is entitled to all video records related to B.W.'s restraint on September 27, 2020 as a matter of law. This Court should therefore grant DRTx's request for summary judgment on its request for a declaratory judgement.

### 3. Federal courts and agencies consistently read the P&A Acts to include video and correctional records, consistent with the plain language of the Acts and their regulations.

This Court's granting summary judgment to DRTx affirming its authority to access video records of a jail restraint of a person with mental illness is also well-supported by case law and the

---

[25] "[A]dministrative implementation of a particular statutory provision qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority." *U.S. v. Mead Corp.,* 533 U.S. 218, 226–27 (2001); *see also Nationsbank, N.A. v. Variable Annuity Life Ins.*, 513 U.S. 251, 257 (1995) ("If the administrator's reading [of a statute] fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design, we give [that] judgment 'controlling weight.'" (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).

[26] SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION; REQUIREMENTS APPLICABLE TO PROTECTION AND ADVOCACY OF INDIVIDUALS WITH MENTAL ILLNESS; Final Rule, 62 Fed. Reg. 53548, 53559-60 (Oct. 15, 1997)("Many respondents noted that to conduct a full investigation, a P&A system should have access to all records whether written or retained in another medium, and whether draft or final document, including handwritten notes, *video or audio tape recordings*; electronic files or photographs; 'daily happenings' sheets (changes in status, discharges, ward transfers); policy and procedures manuals maintained by a facility; court documents; emergency room records; quality assurance documents; personnel records; records of transporting entities; and physical and documentary evidence reviewed with related investigative findings.") (emphasis added).

United States Department of Justice ("DOJ"). Federal courts addressing the breadth of P&As'

authority to access records have repeatedly found that videos fall within the meaning of "records"

to which P&As are entitled.

Analogous to the present case is *Disability Rights Ohio v. Buckeye Ranch*, *Inc.* in which

the court held that as part of its investigation regarding restraints at a residential treatment facility

serving youth in the juvenile justice system, the Ohio P&A was entitled to all records it requested,

including an entire day's video footage. 375 F.Supp.3d 873, 886 (S.D. Ohio 2019). Like numerous

federal courts before it, the court noted that "the statutory phrase 'all records of … any individual'

is quite broad." *Id*. at 888 (quoting *Ctr. For Legal Advoc. v. Hammons*, 323 F.3d 1262, 1270 (10th

Cir. 2003)). In ruling that the facility must provide all records requested by the P&A, the court in

*Buckeye Ranch* explicitly included the requested video within the category of "records" the Ohio

P&A was entitled to access. *Id*. at 886.

Nor do courts treat P&A requests for video differently when the request concerns a

correctional institution. For example, the court in *Disability Rights New York v. Wise* ordered an

investigative agency to provide the New York P&A with records it had in its possession, including

video, regarding an individual who died by suicide in a facility operated by the state department

of corrections. 171 F.Supp.3d 54, 60 (N.D.N.Y. 2016). The court held that "[c]learly, the purpose

of the [P&A] statutes weighs [sic.] in favor of robust disclosure," affirming the P&A's right to the

requested corrections records. *Id.* The *Wise* court explicitly rejected the defendant's argument that

video recordings were not "information" or "individual records" to which the P&A was entitled,

with the court stating that "such an interpretation is contrary to the express language of the

regulations." *Id*. at 60 – 61. Additionally, the P&A's assertion that it was entitled to "all relevant

records" in the possession of the investigative agency under the PAIMI Act was supported by

the breadth of records which the regulations require disclosure of, as well as the fact that they contain an inclusive and not exhaustive list of records that must be disclosed

*Id.* at 61.

The DOJ has also filed several Statements of Interest on behalf of the United States and in support P&A systems nationwide in cases to ensure the proper interpretation and application of the P&A Acts.[27] Just last year in February 2021, the DOJ submitted a Statement of Interest in *Disability Rights Arkansas, Inc. v. Solomon Graves* in which the Arkansas P&A requested video surveillance footage from the Arkansas Department of Corrections. *See Exhibit H.*[28] The DOJ specifically noted the "United States' interest in ensuring that the federal rights of [persons with disabilities] are protected" and thus offered the court its understanding of the P&A Acts, including that correctional institutions are included within the facilities in which a P&A is charged to investigate abuse and that video is explicitly included within the universe of records P&As are entitled access. *Id.* at pp. 1, 5. Following the filing of the DOJ's statement of interest in the *Graves* case, the court denied the defendant's motion to dismiss the Arkansas's P&A's access case, finding that the P&A is entitled to records related to an inmate with mental illness in a correctional facility and that the "records" to which the PAIMI Act affords access are broad and include video, not just medical records of an inmate.[29]

## C.    DRTx's Special Right of Access Trumps Conflicting State Law

---

[27] *See e.g.*, Statement of Interest of the United States, *Disability Rights New York v. New York State Department of Corrections and Community Supervision and Anthony J. Annucci*, 1:18-00980, ECF No. 62 (N.D. N.Y. March 30, 2020) attached as Exhibit E; Department of Justice Statement of Interest, *In Re Matter of Disability Rights Idaho, Inc. v. Erwin Sonnenberg*, 1:14-cv-00369, ECF No. 40 (D. Idaho July 20, 2015) attached as Exhibit F; Statement of Interest of the United States of America, *Georgia Advocacy Office, Inc. v. Frank Shelp*, 1:09-cv-2880, ECF No. 47 (N.D. Ga. June 25, 2010) attached as Exhibit G.

[28] Department of Justice Statement of Interest, *Disability Rights Arkansas v. Graves*, 4:20-CV-01081, ECF. No. 18 (E.D. Ark. February 10, 2021) attached as Exhibit H.

[29] Order denying Defendant's Motions to Dismiss, *Disability Rights Arkansas v. Graves*, 4:20-CV-01081, ECF. No. 21 (E.D. Ark. May 5, 2021) attached as Exhibit I.

In withholding the requested video despite the clear language of the P&A Acts and regulations, Defendant relies, at least in part, on an erroneously decided Texas Attorney General's Opinion which authorized Defendant to withhold records based solely on state law exceptions. *See* Defendant's Answer (Doc. # 14) at ¶¶ 17-18 (admitting Defendant sought and obtained a Texas Attorney General's Opinion authorizing withholding of the requested video based on state law exceptions). The state law exceptions relied upon, however, and the Texas Attorney General's opinion interpreting those laws are irrelevant in the face of the conflicting federal law authorizing DRTx to access the requested records discussed above.

It is axiomatic that federal laws trump conflicting state laws. U.S. CONST. ART. IV, ¶ 2. Indeed, by the explicit language of the federal P&A Acts, DRTx's P&A authority trumps any and all contrary state laws. 42 U.S.C. § 10806(b)(2)(C) (after May 23, 1988, sections of the PAIMI Act governing a P&A's federal right of access apply, regardless of the laws of the state); *see also* 42 C.F.R. § 51.31(i) ("State law must not diminish the required authority" of the P&A System.); 45 C.F.R. § 1326.21(f) (same); *Office of Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 319 (D. Conn. 2003) ("The PAIMI [Act] is quite clear, however, that a P&A's authority to seek records as provided in the Act preempts any State law to the contrary by virtue of the Supremacy Clause of the United States Constitution."). The Texas Legislature affirmed DRTx's authority when it likewise passed legislation requiring "*[n]otwithstanding other state law*, the protection and advocacy system established in this state under the [PAIMI Act] and [PADD Act] is entitled to access to records relating to persons with mental illness or developmental disabilities to the extent authorized by federal law." TEX. HEALTH & SAFETY CODE § 615.002(a) (emphasis added). Indeed, every court, including a Texas federal district court, that has addressed the P&A system's special access authority to records and information in relation to

state laws seeking to restrict the P&A system's access has held that such state laws are pre-empted by the P&A Acts.[30] *See, Advocacy, Inc. v. Adelaide Horn, et al*., Civil No. A-08-CA-071-LY, 2009 WL 10698769, at *3 (W.D. Tex. March 26, 2009). Therefore, if the records requested fall within DRTx's federal mandate, DRTx is entitled to the information regardless of any state law exemptions.

## D.   DRTx's Duty to Maintain Records' Confidentiality Weighs in Favor of Disclosure.

Although Defendant's Answer did not claim a privacy exception, it is worth noting that the release of the requested video records to DRTx would not implicate any privacy or security concerns because DRTx is bound by the same confidentiality requirements as the Detention Center. Specifically, in exercising its P&A authority, a P&A is bound to maintain the confidentiality of records to the same extent as the original holder of the records is required by federal or state law. 42 U.S.C. § 10806(a); 42 C.F.R. § 51.45(a)(1); 45 C.F.R. § 1326.28(a)-(b). Congress indicated that the purpose of these provisions is to ensure that P&As maintain the confidentiality of such records "in compliance with applicable State, Federal and local laws and the rules of any involved organization or institution which has legal responsibility for the records." S. Rep. No. 99-109, at 10 (1985).[31] Courts have relied on this provision when holding that entities may not withhold records based on claims of confidentiality drawn from state statutes.[32]

---

[30] *See e.g. Penn. Protection & Adv., Inc. v. Houstoun*, 228 F.3d 423, 428 (3rd 2000) (Then-judge, now Supreme Court Justice Alito holding for the majority that PAIMI "preempts any state law that gives a healthcare facility the right to withhold such records."); *Stalder*, 128 F. Supp. 2d at 366-67 (P&A Acts preempt state law regarding inmate records); *Wisc. Coalition for Adv., Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1048 (E.D. Wisc. 2001)("Stated another way, if there is a conflict between the federal statutes and the state statute with respect to the agency/system's authority to have access to the records of an individual with developmental disabilities or mental illness, it is the federal statutes which control. To hold otherwise would fly in the face of the Supremacy Clause of the Constitution.").
[31] *Reprinted in* 1986 U.S.C.C.A.N. 1361, 1370.
[32] *See e.g., Ctr. for Legal Advocacy v. Hammons*, 323 F.3d 1262, 1270-71 (10th Cir. 2003) (A state law that imposed an obligation on a facility to maintain records in a confidential manner posed the same confidentiality obligation on the P&A obtaining access to the record.); *Penn. Prot. & Advocacy, Inc. v. Houstoun*, 228 F.3d 423, 428-29 (3d Cir.

Courts have recognized that releasing records to DRTx is not the same as releasing records to the public. The P&A Acts provide a careful balance between state concerns regarding confidentiality and the need for P&A systems to access all records relevant to an investigation of abuse, neglect, injury, or death of a person with a disability when granting P&A systems broad access to records. For example, in *Disability Rights Wisconsin, Inc. v. State of Wisconsin Department of Public Instruction,* the court noted that due to the confidentiality requirement common to both the P&A and the holder of records, the P&A's possession of the information was no more troubling in terms of privacy than the original holder's. 463 F.3d 719, 729 (7th Cir. 2006). Likewise, the court in *Robbins v. Budke* stated that "[t]he protection of confidentiality is a significant governmental interest. However, unlike the attorneys to which the restrictions do not apply, [the] P&A is required by the Act to maintain the confidentiality. . . ." 739 F.Supp. 1479, 1488 (D.N.M. 1990).

Therefore, any concern that release of Detention Center video records to DRTx will compromise any state confidentiality laws or the integrity and security of the facility is without merit as DRTx is required to maintain the confidentiality of the requested video to the same extent as is required of the Detention Center. 42 U.S.C. § 10806(a); 42 C.F.R. § 51.45(a)(1); 45 C.F.R. § 1326.28(a)-(b).[33]

---

2000) (Because PAIMI requires P&As to maintain the confidentiality of records, disclosure was not precluded by a state statute requiring facilities to maintain the confidentiality of such records); *Office of Prot. & Advocacy for Persons with Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 310-11 (D. Conn. 2003) ("Records obtained by the State's P&A pursuant to PAIMI are subject to the same Federal or State confidentiality regulations that are applicable to providers of mental health services.").

[33] As noted above, DRTx seeks access to the records under its special right of access and is not a member of the "public." As the designated P&A, DRTx is entitled to "reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness," including jails. 42 C.F.R. § 51.42(b); *see also* 45 C.F.R. §1326.27(c). This access specifically includes "all areas which are used by residents, are accessible to residents, and to programs and their residents…" and includes not only viewing but also photographing and videoing all areas of the facility used by and accessible to persons with disabilities. 42 C.F.R. § 51.42(c); *see also* 45 C.F.R. § 1326.27(c). In this instance, the video requested is of the restraint of B.W., which means that all requested video is of an area which an inmate has access to since B.W. was in that area. DRTx therefore

E. **DEFENDANT IS NOT ENTITLED TO QUALIFIED IMMUNITY; THUS DRTX IS ENTITLED TO SUMMARY JUDGMENT.**

Based on the foregoing, DRTx is entitled to its requested declaratory relief as a matter of law. There are no genuine issues of material fact regarding the circumstances of DRTx's request to the Detention Center for the video records of B.W.'s restraint. It is undisputed that DRTx sued Defendant in his official capacity as the Sheriff of Taylor County under 42 U.S.C. § 1983 which waives qualified immunity for persons who, acting under the color of law, deprive entities like DRTx of their rights and privileges secured by law.

Indeed, as to Defendant's qualified immunity defense, Defendant's Answer (ECF No. # 14) at ¶ 26(1), federal courts are clear that qualified immunity is not a bar to declaratory or injunctive relief. *Leggett v. Duke*, 279 F.App'x 301, 303 (5th Cir. 2008) (per curiam) (holding qualified immunity was not a defense to prisoner's claims for declaratory or injunctive relief); *Chrissy F. by Medley v Miss. Dept. of Public Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) ("Neither absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983.") Rather, qualified immunity is a potential bar to monetary damages actions. Plaintiff is not seeking monetary damages, only injunctive and declaratory relief; therefore, Defendant cannot claim qualified immunity as an affirmative defense to Plaintiff's claims, nor is it a ground for denial of Plaintiff's Motion for Summary Judgment.

The plain language of the P&A Acts, bolstered by the regulations and case law, clearly establish that DRTx is entitled to the requested video records as a matter of law and that state law is no bar to this relief. Because Defendant has denied DRTx records to which it is entitled as a matter of law and qualified immunity does not apply, DRTx is entitled to its requested declaratory

---

already has access to these areas of the jail to inspect, photograph, and view them, including seeing where cameras are located and learning the layout of the jail. It belies logic to suggest that providing DRTx with video of areas where DRTx's staff already have access will somehow compromise inmate privacy or jail security.

relief pursuant to 42 U.S.C. § 1983. This Court should grant summary judgment as to DRTx's requested declaratory relief.

**F.   DRTx Is Entitled to a Permanent Injunction Requiring Defendant to Disclose Video Record to DRTx where DRTx Will Suffer Irreparable Harm if its Federal Mandates are Interfered With And there is No Other Adequate Remedy, There is No Harm to Defendant, and it is in the Public's Interest.**

### 1.   *Standard for issuing a permanent injunction*

A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and that the public interest is not disserved by the injunction. *eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Additionally, the movant must succeed on the merits of its claim and cannot rest on a mere showing of a likelihood of success. *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 fn 12 (1987), citing *University of Texas v. Camenisch*, 451 U.S. 390 (1981).

### 2.   *Defendant's conduct has irreparably harmed DRTx and there is no other adequate remedy at law besides the prayed-for injunction.*

Defendant's refusal to produce the restraint video of B.W. prevents DRTx from investigating the allegation of abuse of B.W. and constitutes an irreparable injury for which there is no other adequate remedy at law. As noted above and as noted by the United States Department of Health and Human Services when promulgating the Final Rule under the PAIMI Act, video footage is often necessary in order for a P&A to conduct an effective investigation to determine whether a person with a disability has been subject to abuse or neglect.[34] DRTx staff have learned through experience in investigating cases of abuse and neglect which records typically contain

---

[34] *Supra* Section IV(B)(2); footnote 26.

information that is relevant to its investigation, hence the request for video surveillance in this case. For example, written records alone often do not contain a full accounting of an incident like a restraint since these events often happen fast, with staff not completing documentation until sometime later. When staff complete written documentation, they can omit relevant information and can exclude information that casts facility staff in a negative light, whether deliberately or accidentally. This information is precisely the kind of information DRTx often finds necessary to confirm whether abuse or neglect has occurred. In this case, DRTx has received B.W.'s medical and jail records, Defendant's Answer (Doc. # 14) at ¶ 16, but still cannot determine if Detention Center officers abused B.W. without reviewing the requested video records. Defendant's denial has prevented DRTx from completing its federally-mandated investigation.

Numerous courts have agreed that full, robust access to records is necessary for a P&A to conduct a thorough investigation and that denial of records constitutes an injury to that interest. *See e.g.*, *Buckeye Ranch*, 375 F.Supp.3d at 897 ("[T]here is no dispute that a P&A system's 'inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm.'"); *Iowa Prot. & Adv. Servs. v. Rasmussen*, 206 F.R.D. 630, 635 (S.D. Iowa 2001) (without regard to whether investigation will ultimately confirm abuse, P&A is still irreparably harmed by being prevented from fully accessing records as part of its investigation).

Further, there are no other adequate remedies at law to redress DRTx's injury as DRTx has no other source or mechanism by which to obtain the requested video other than from Defendant. Indeed, the futility of any other alternative remedies is highlighted by the Texas Attorney General's opinion which wrongfully denied DRTx access to the requested records based solely on state law claims. Case law interpreting the P&A Acts has, again, consistently determined P&As have no other adequate remedies other than injunctions like DRTx has prayed for here. *See e.g., Stalder*,

128 F.Supp.2d at367-68 (No adequate legal remedy was available to remedy facility's denial of records and future injury was cognizable so permanent injunction was appropriate); *Armstrong*, 266 F.Supp.2d at 311, 322 (Connecticut P&A had no adequate remedy at law to redress denial of records from correctional facility and was entitled to summary judgment and permanent injunction).

### 3.  *Balancing the burdens on each party and considering the public interest favors the Court's granting DRTx's request.*

Having established that DRTx's interest in obtaining the records to fulfill its statutory mandate has been injured and that DRTx has no other adequate remedy other than an injunction, the remaining considerations are the relative burdens the request imposes on each party and the public interest. The burden on DRTx if it is not given access to the records is substantial; it cannot fulfill its mandate under federal law to investigate complaints, or at least will be significantly delayed in conducting investigations if it must seek court orders to access records. *See. Stalder*, 128 F. Supp. 2d at 367. (Forcing a P&A "to obtain a court order every time it seeks to investigate, would, in effect, impede its ability to investigate a claim."). Conversely the burden on Defendant is minimal—Defendant has already preserved the requested video, *Exhibit B*, and, because DRTx has a federal duty to keep the video records confidential, there are no privacy or security concerns related to its release. *See supra* Section IV(D). Indeed, there can be no undue burden associated with requiring an official to comply with a law they are already bound to follow. As noted by the court in *Stalder*,

> [T]he court sees no harm that would come to the defendants by forcing them to comply with the provisions of the PAIMI Act, a law adopted by the national legislature. Issuance of a permanent injunction…does not subject the defendants to a penalty or hardship since it requires them to do exactly what the act requires, *i.e.*, to comply with the law.

128 F.Supp.2d at 368; *see also, Wisc. Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d

1039, 1052 (E.D. Wisc. 2001) (Releasing records to P&A would have the opposite effect of harm as complying with law/court order would protect defendants from action related to violating cited regulations).

The public interest is likewise benefitted by release of the requested records to DRTx. Texas faces a significant and pressing problem concerning its treatment of individuals in county jails, especially those with mental illness. In 2020, there were twenty deaths by suicide in Texas county jails, over one hundred deaths in custody, almost 14,000 assaults reported, and over 200 serious bodily injuries.[35] The assault statistics in particular were a substantial increase from the year before, with only 10,539 assaults reported in 2019.[36] On October 27, 2020, the Texas Commission on Jail Standards issued a Technical Assistance Memorandum after several jail inspections determined jails were not following observation requirements for individuals in restraints.[37] These facts underscore the important public interest role DRTx plays by investigating alleged incidents of abuse and neglect and advocating to reduce or eliminate similar incidents in the future. Indeed, the findings of the P&A Acts concerning the rampant abuse of persons with disabilities and the inadequacy of existing oversight entities is itself proof that it is in the public's interest for DRTx to complete its statutorily-mandated investigation. 42 U.S.C. § 10801(a)(1), (3), (4); 42 U.S.C. § 15001(a)(5); *see also Buckeye Ranch*, 375 F.Supp.3d at 897.

Given the irreparable harm faced by DRTx, the lack of adequate remedy, the substantial burden DRTx faces if the permanent injunction is not granted, as well as the nonexistent burden

---

[35] TEXAS COMMISSION ON JAIL STANDARDS, CALENDAR YEAR 2020 ANNUAL REPORT at 15 *available at https://www.tcjs.state.tx.us/wp-content/uploads/2021/09/AR2020.pdf.*
[36] *Id.*
[37] TEXAS COMMISSION ON JAIL STANDARDS, TECHNICAL ASSISTANCE MEMORANDUM REGARDING USE OF RESTRAINTS/ DOCUMENTED OBSERVATIONS, October 27, 2020 *available at https://www.tcjs.state.tx.us/wp-content/uploads/2020/10/TA_Memo-Use_of_Restraints_Observations.pdf.*

to Defendant and the public's interest in ensuring that persons with disabilities are free from abuse and neglect, this Court should grant DRTx's requested permanent injunction.

<u>**CONCLUSION**</u>

For the foregoing reasons, DRTx requests that this Court grant DRTx's Motion for Summary Judgment and enter a permanent injunction enjoining the Defendant from continuing to refuse DRTx access to the video records of B.W.'s restraint in pursuit of its statutory obligation to investigate alleged incidents of abuse and neglect. Furthermore, the Court should prevent the Defendant from engaging in similar acts in the future and declare that the Taylor County Sheriff's Office's policy of refusing to provide DRTx with video recordings of restraints of individuals with mental illness incarcerated at the facility operated by Defendant violates the P&A Acts.

DATED: March 17, 2022

Respectfully Submitted,

BETH L. MITCHELL
State Bar No. 00784613
bmitchell@drtx.org

LISA SNEAD
*Admitted Pro Hac Vice*
State Bar No. 24062204
lsnead@drtx.org
DISABILITY RIGHTS TEXAS
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Austin Office)
(512) 454-3999 (Austin Fax)

COURTNEY LUTHER
*Admitted Pro Hac Vice*
State Bar No. 24101063
cluther@drtx.org
DISABILITY RIGHTS TEXAS
1500 McGowen St., Suite 100

Houston, Texas 77004
(713) 974-7691 (Houston Office)
(713) 974-7695 (Houston Fax)

ATTORNEYS FOR PLAINTIFF


**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2021, a true and correct copy of the forgoing document was electronically filed using the Court's CM/ECF filing system, thus providing notice of electronic filing to the following:

Frank R. Stamey
300 Oak Street, Suite 300
Abilene, Texas 79602
stameyf@taylorcountytexas.org

Robert B. Wagstaff
P.O. Box 3679
Abilene, Texas 79604
rwagstaff@mss.law


_____
BETH L. MITCHELL