UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| DISABILITY RIGHTS TEXAS,<br><br>    Plaintiff,<br><br>v.<br><br>RICKY BISHOP, in his official capacity as the Sheriff of Taylor County,<br><br>    Defendant. | No. 1:21-CV-124-H |

# ORDER

Disability Rights Texas (DRTx) filed this lawsuit under 42 U.S.C. § 1983, arguing that the defendant violated federal law by failing to turn over video footage of an incident in which, allegedly, a disabled detainee was inappropriately restrained. The Court granted summary judgment in part, finding that the defendant, the Sheriff of Taylor County, violated the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI). Currently before the Court is DRTx's motion for attorneys' fees and costs. Absent special circumstances, the prevailing party in a Section 1983 case is entitled to costs and reasonable fees. DRTx asks for $545.50 in costs and $43,440 in fees, supported by thorough briefing and detailed billing records—in which DRTx voluntarily writes off a large proportion of its hours expended. In contrast, the defendant submits a brief response that cites no authority and fails to base its arguments on the controlling legal standard. The defendant's arguments are either meritless or contradicted by controlling precedent. Because no special circumstances would make an award unjust—and given that DRTx has presented evidence satisfying the lodestar standard—the motion for attorneys' fees is granted. DRTx is entitled to $545.50 in costs and $43,440 in reasonable and necessary attorneys' fees.

1. **Factual and Procedural Background**

The Court has previously recounted the factual underpinnings of this case (Dkt. No. 30), so only a brief description of the underlying facts is provided here. DRTx is the designated protection and advocacy organization for the State of Texas. Under the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), DRTx is empowered to investigate abuse of the mentally ill. *See* 42 U.S.C. §§ 10801–27.

In October 2020, DRTx received a complaint that B.W., an individual with mental illness, was inappropriately restrained by officers in the Taylor County Detention Center. Dkt. No. 1 at 4. Based on these allegations, DRTx opened an investigation and obtained B.W.'s written consent to access his records. *Id.* DRTx requested B.W.'s medical records, mental-health records, and video footage of his restraint, citing its authority under 42 U.S.C. § 10805(a)(4)(A). *Id.* at 5–6. The defendant Bishop, as Sherriff of Taylor County, provided the medical records and mental-health records but withheld the video footage, relying on an opinion by the Texas Attorney General that concluded that video footage is not covered within PAIMI's definition of records. *Id.* at 5; Dkt. No. 27 at 2.

DRTx filed suit, asking the Court to (1) enter a permanent injunction providing the video records, (2) issue a declaratory judgment that the defendant violated federal law, and (3) enter a permanent injunction preventing the defendant from denying future video-records requests. Dkt. No. 1 at 7. DRTx filed a motion for summary judgment (Dkt. No. 24), which the Court granted in part. Dkt. No. 30. The Court provided declaratory relief and injunctive relief as to the video records in this case but declined to provide DRTx carte-blanche access to future video recordings. *Id.* at 26.

DRTx now seeks its fees and costs. Before the Court are the plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 33), Bishop's response (Dkt. No. 37), and the plaintiff's reply (Dkt. No. 38). The motion for fees is thus ripe for review. In its motion, DRTx requests $43,440.00 in attorneys' fees and $545.50 in court costs. Dkt. No. 33 at 2.

**2.    The lodestar method**

If a court deems fees to be proper, it must first calculate the "lodestar." *Jimenez v. Wood County*, 621 F.3d 372, 379 (5th Cir. 2010). The lodestar equals "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* (internal citation omitted). The movant must show "the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013) (internal citation omitted). Such a showing requires an adequate record "of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The record cannot be "so vague" as to "preclude[] meaningful review" of the work performed during the hours specified. *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). The movant must also produce evidence "that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty.*, 752 F.2d 1063, 1073 (5th Cir. 2013).

3. Analysis

    A. **DRTx is entitled to an award of attorneys' fees.**

The prevailing party in Section 1983 lawsuits are entitled to attorneys' fees. Section 1988 of Title 42 provides that in "any action or proceeding to enforce" Section 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Despite this permissive statutory language, the Fifth Circuit understands "the judicial gloss on § 1988, and its legislative history," to have "constrained that discretion, . . . converting the statute's 'may' into a 'must.'" *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014). Given this precedent, DRTx thus asserts that an award of attorneys fees is "all-but-mandatory" in Section 1983 cases. Dkt. No. 34 at 7. The Court agrees: The prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Lefemine v. Wideman*, 568 U.S. 1, 5 (2012); *see also Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) ("[A]bsent special circumstances, a prevailing plaintiff should be awarded section 1988 fees *as a matter of course*.") (emphasis in original). Thus, the prevailing party in a Section 1983 case—absent special circumstances—is entitled to reasonable attorney's fees. The parties do not dispute that this is an action to enforce Section 1983.[1]

---

[1] Bishop does state in its response that "the Defendant denies any such § 1983 violation occurred and this Court simply held that Sheriff Bishop violated the PAIMI or DD Act authorized records request in failing to turn over the video in question." Dkt. No. 37 at 5. But the defendant makes this argument only in an attempt to invoke qualified immunity, which the Court addresses in Part 3.A.ii. *Id.* Thus, the defendant does not dispute that this is an action to enforce federal rights pursuant to Section 1983. *See* 42 U.S.C. § 1988; *see also Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) ("Section 1983 does not confer rights, but instead allows individuals to enforce rights contained in the United States Constitution and defined by federal law.").

### i.    DRTx meets the statutory definition of a prevailing party.

First, DRTx is a prevailing party.  While DRTx is not required to win on every claim, argument, or form of relief requested, it must "cross[] the 'statutory threshold' of prevailing party status."  *Tex. St. Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989).  A plaintiff need only "establish[] his entitlement to some relief on the merits of his claims" to find himself on the favorable side of that statutory threshold.  *Hanrahan v. Hampton*, 446 U.S. 754, 757 (1980).  But the prevailing-party standard is not satisfied "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*."  *Tex. St. Teachers Ass'n*, 489 U.S. at 792.  Instead, there must be "a material alteration of the legal relationship" between the parties.  *Id.*  Thus, "[a] prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought."  *Id.* at 791.

DRTx easily meets this standard.  On DRTx's summary-judgment motion, the Court issued declaratory relief, finding that Bishop had violated PAIMI by refusing to produce the video footage.  Dkt. No. 31.  Additionally, the Court issued an injunction requiring Bishop to allow DRTx to "immediately access [] all video records pertaining to the alleged restraint of B.W."  *Id.*  Outside of its request for injunctive relief as to future records requests, which the Court denied, and its request for attorneys fees, which is resolved in this order, DRTx got everything it wanted.  DRTx succeeded on multiple, significant claims and obtained the relief it primarily sought—access to the video records.  DRTx won the bulk of this lawsuit and is a prevailing party.

### ii. No special circumstances exist to prevent DRTx from recovering its fees.

Second, there are no special circumstances here that would weigh against an award of fees. Bishop appears to argue[2] that three separate bases qualify as special circumstances. First, in Bishops' view, "it is certainly reasonable for Sheriff Bishop to have been unsure of just what he was required to turn over with regard to any video evidence, and not wanting to make a mistake either way" based on Bishop's reliance on a Texas Attorney General opinion. Dkt. No. 37 at 5. Second, Bishop argues that qualified immunity shields him from Section 1988's fee-shifting mandate. *Id.* Finally, Bishop argues that the Court should either deny or limit the fees requested because, in Bishop's words, "no attorneys' fees were actually generated." *Id.* at 6.

In its opening brief, DRTx asserts that "neither good faith nor qualified immunity are 'special circumstances' that justify the denial of attorneys' fees from a prevailing party under Section 1988." Dkt. No. 34 at 8. DRTx backs this up with controlling, on-point authority: "Good faith is not a special circumstance." *Kirchberg v. Feenstra*, 708 F.2d 991, 999 (5th Cir. 1983). The Fifth Circuit has described special circumstances as "few and far between," "a narrow carve-out," and "extremely limited." *Grisham v. City of Fort Worth*, 837 F.3d 564, 568 (5th Cir. 2016); *Sanchez*, 774 F.3d at 880. Like good faith, an assertion of qualified immunity does not render a defendant immune from Section 1988. *Millennium Restaurant Grp., Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 809 (N.D. Tex. 2002) ("In actions

---

[2] Throughout Bishop's brief response, the term "special circumstances" does not appear. To the extent Bishop argues that good-faith reliance, qualified immunity, and source-of-funding are bases to deny or limit DRTx's fees request on a basis other than special circumstances, those arguments are meritless. *See supra* Part 3.A (collecting authorities that describe attorneys' fees in Section 1983 cases as "all-but-mandatory").

– 6 –

against public officials in their official capacities, the doctrine of qualified immunity plays no part, prohibiting neither the grant of injunctive relief, nor the award of attorney's fees.").

True to the plaintiff's prediction, Bishop's response argues that "good faith and qualified immunity" should serve as bases to "deny or at least limit the attorneys' fees award in the Court's discretion." Dkt. No. 37 at 5. Unlike DRTx, Bishop cites no authority in support of this argument.[3] But the caselaw is clear: Good faith is no defense to a fees motion. "Good faith is not a special circumstance sufficient to justify the denial of fees under §1988." *Espino v. Besteiro*, 708 F.2d 1002, 1005 (5th Cir. 1983); *Kirchberg*, 708 F.2d at 999 (same); *Grisham*, 837 F.3d at 569 (same); *see also Riddell v. Nat. Democratic Party*, 624 F.2d 539, 545 (5th Cir. 1980) ("State Officials cannot show special circumstances sufficient to prevent an award of fees merely because the officials enforced [a] statute in good faith compliance with their official duty . . . ."). Nor is qualified immunity a basis for denying or limiting a plaintiff's fees award under Section 1988. *Millennium Restaurants Grp., Inc.*, 191 F. Supp. 2d at 809 ("[T]he doctrine of qualified immunity . . . prohibit[s] neither the grant of injunctive relief, nor the award of attorney's fees."); *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir. 1989) (same).

Bishop's response also asks the Court to consider that DRTx "receives 80% of it's [sic] funding from Federal grants, . . . 15% from Texas Access to Justice Fund, . . . and around 5% from 'other' sources." Dkt. No. 37 at 6. In other words, the defendant makes a

---

[3] As DRTx notes in its reply brief, Local Civil Rule 7.1(d) requires that "[a] response to an opposed motion must be accompanied by a brief that sets forth the responding party's . . . argument and authorities." Loc. Civ. R. 7.1(d). DRTx asks the Court to strike the response for failing to comply with Local Civil Rule 7.1(d). Dkt. No. 38 at 2. While the Court recognizes its authority to "strike [Bishop's] Response[] in [its] entirety for failure to comply with local rules," it ultimately will consider the response in the interest of judicial economy. *Tex. Hous. Agency v. Verex Assur., Inc.*, 176 F.R.D. 534, 535 (N.D. Tex. 1998).

source-of-funding argument. This argument has been resoundingly rejected throughout the federal judiciary. *E.g.*, *Blum v. Stenson*, 465 U.S. 886, 892–93 (1984); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 n.2 (2d Cir. 2008); *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993); *Eley v. District of Columbia*, 793 F.3d 97, 103 (D.C. Cir. 2015). Thus, Bishop's final attempt to establish a special circumstance falls well short.

### B. DRTx has established costs of $545.50 and reasonable attorneys' fees of $43,440.

DRTx has established costs of $545.50. The Clerk of Court taxed costs of $545.50, consisting of fees of the Clerk ($402.00) and fees for service of summons and subpoenas ($143.50). Dkt. No. 36. Per Federal Rule of Civil Procedure 54(d)(1), absent a statute or court order to the contrary, a prevailing party "should" be allowed taxable costs. And as DRTx points out, "good faith does not rebut the presumption" that taxable costs should be allowed to the prevailing party. Dkt. No. 38 at 11 n.12 (quoting *Pacheco v. Mineta*, 448 F.3d 783, 793, 795 (5th Cir. 2006)). Thus, DRTx is entitled to its costs of $545.50, and nowhere in his response does Bishop dispute this.

#### i. Calculating the lodestar

The lodestar equals "the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Jimenez*, 621 F.3d at 379. "[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). "[T]he lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.*

### a.     The reasonable hourly rate

DRTx has established that it is entitled to reasonable and necessary attorneys' fees of $43,440. At the outset, the Court notes that Bishop only half-heartedly challenges the reasonableness of the requested hourly rates. On one hand, the defendant's counsel submitted an affidavit, in which he swore to the following: "I believe that a reasonable and necessary hourly rate for this type of work in a federal case in the Abilene Division of the Northern District of Texas is generally $250.00." Dkt. No. 37–1 at 1–2. However, nowhere in the response does Bishop challenge the hourly rates of DRTx's counsel. *See generally* Dkt. No. 37. And in his counsel's affidavit, Bishop admits that "an hourly rate of $400.00 is . . . also reasonable given the attorneys' experience." Dkt. No. 37-1 at 2. DRTx takes this as an admission, claiming that Bishop "does not challenge the requested hourly rates of Plaintiff's attorneys or their use of the district as the prevailing market." Dkt. No. 38 at 8. The Court does not take Bishop's statement in his counsel's affidavit as a judicial admission that $400.00 is a reasonable hourly rate in this case. However, DRTx is correct that Bishop has failed to brief the issue, and defense counsel's naked assertion that $250.00 is the reasonable hourly rate does not move the needle.

The Court finds that the reasonable and necessary hourly rates are $400.00 for Beth Mitchell and $300.00 for Lisa Snead. Both attorneys who requested fees for DRTx have extensive, impressive experience. For instance, Ms. Mitchell has over three decades of experience litigating civil-rights cases. Dkt. No. 35 at 3. She has been lead counsel in dozens of cases in federal and state court and has handled P&A access cases and class actions. *Id.* at 4. And Ms. Snead has extensive experience, as well. After graduating magna cum laude from the University of Texas School of Law, Ms. Snead began her career

as a Skadden Fellow, working for DRTx. *Id.* at 13. Ms. Snead has 13 years of experience with P&A access cases and civil-rights cases generally, and she has filed amicus briefs before the Fifth Circuit and Supreme Court. *Id.* at 13–15.

Given these impressive credentials, Ms. Mitchell and Snead are certainly entitled to the standard-fare rates awarded in the Northern District of Texas. Rates found to be reasonable "in the Northern District of Texas generally fall between $200 and $400 per hour." *Vestas-Am. Wind Tech., Inc. v. Salazar*, No. 6:19-CV-00076-H, 2020 WL 12029327, at *3 (N.D. Tex. Dec. 8, 2020); *see, e.g.*, *Jimenez v. Rockwood Dev., L.L.C.*, No. 3:17-CV-3174-C, 2018 WL 11433002, at *2 (N.D. Tex. Dec. 12, 2018) (finding hourly rates of $390 and $260 to be reasonable); *Sencore, Inc. v. Wireless Acquisitions, LLC*, No. 3:17-CV-00038-B, 2018 WL 2684543, at *1 (N.D. Tex. June 5, 2018) (finding hourly rates of $300 and $220 to be reasonable); *D.C. v. Dall. Indep. Sch. Dist.*, 3:17-CV-02981-E (N.D. Tex. July 23, 2020) (approving hourly rates of $295 and $210 for a partner and associate, respectively). Thus, hourly rates of $400 for Ms. Mitchell and $300 for Ms. Snead are more than reasonable, given their extensive experience relative to the market rate.

### b. Hours reasonably expended

Bishop's primary argument in his response and affidavit is that DRTx's expended hours are unreasonable—not because too much time was spent on certain tasks—but because, in Bishop's view, DRTx simply lied about the amount of time it spent working this case. Dkt. No. 37 at 6 ("It is hard to imagine they did not have the briefing and pleadings ready from either prior cases or in preparation for someone to deny access to certain records such as videos."); *id.* at 6–7 (stating it "would be difficult to believe" that the work done by DRTx's counsel "was 'new' legal work"); *id.* (stating that DRTx's work on this case "must

surely be a large part [sic] cutting and pasting previous pleadings, motions and briefs"); *id.* (arguing that DRTx is "clearly . . . wanting the County to pay for previous work before this case"); *id.* (describing DRTx's careful briefing in this case as "trying to bootstrap other legal work into this claim").

The Court disagrees. First, Bishop provides no evidence of any fraudulent billing. And even Bishop concedes that his argument is based on no evidence. *Id.* at 7 ("If the assumption is correct . . . ."); *id.* at 3 ("Plaintiff . . . presumably had the legal research and pleadings already at least drafted before this case came along."). Ms. Mitchell and Ms. Snead filed competent declarations, both swearing that "[t]he attached records . . . are true and accurate reflections of the time [] spent *on this case*." Dkt. No. 35 at 6, 16 (emphasis added).

Second, DRTx has exhibited full candor and exceptionally cautious billing judgment. For instance, Ms. Snead reported that she worked a total of 130.80 hours on the case—despite only billing for 76.40. Dkt. No. 35 at 19. Ms. Mitchell worked 73.10 but only billed for 51.30. *Id.* at 12. For these two attorneys, DRTx seeks fees for only 63% of the total time worked. And Ms. Mitchell reveals in her affidavit that the work of three others—attorney Courtney Luther (167.7 hours) and paralegals Marisol McNair (18.5 hours) and Ketriska Phillips (10.0 hours)—was written off in its entirety. *Id.* at 7. Thus, DRTx only seeks reimbursement for 32% of the total hours worked on this matter.

Finally, the Court finds that the hours requested (76.40 and 51.30 for Ms. Snead and Ms. Mitchell, respectively, for a total of 127.7) are reasonable and necessary. Each time entry contained within Ms. Mitchell and Ms. Snead's affidavits provides a short description of the task performed, the date it was performed, the person who performed it, the number

of hours expended on it, and the rate and total amount charged for it. *See generally id.* at 10–12, 17–19. Ms. Mitchell's billing entries reveal that, as lead counsel, she had primary responsibility for supervisory and strategic decisions but also that she was heavily involved in research, drafting, and editing. *See id.* at 10–12. For Ms. Mitchell, strategic tasks—for example, discussing edits, drafting emails, and meeting with opposing counsel or her team—were typically billed in increments of 0.1 to 1.5 hours. *Id.* And many of these tasks were written off by Ms. Mitchell, in part or in whole. *See, e.g.*, *id.* at 10 (demonstrating that the "Meeting with LS and CL re: next steps including disclosures, joint report requirements, etc." time entry was written off from 1.00 to 0.00 hours); *id.* at 11 (showing that the "Discussion with LS and CL re: Reply to MSJ" time entry was written off from 1.00 to 0.00 hours). Drafting tasks were billed in increments typically less than four hours, and many of these tasks have already been written off, in whole or in part. *See, e.g.*, *id.* at 11 (noting that the "Drafting/editing Brief in Support of Motion to Strike Experts" time entry was written off from 4.70 to 2.70 hours).

For Ms. Snead, her work consisted primarily of research, drafting, and editing. *Id.* at 17–19. She billed in the largest increments when researching for, drafting, and editing the major pleadings in this case—the complaint, the joint scheduling report, and the briefing for the motions for summary judgment and fees. *Id.* At most, Ms. Snead billed in increments of five-to-seven hours. *Id.* But in most cases those longer time entries were, in part, written off. *E.g.*, *id.* at 18 (writing off 2.00 hours from the joint-report draft edits); *id.* at 19 (writing off 2.00 hours from edits to "MSJ brief draft"); *id.* (writing off all 2.10 hours of "[f]inal line edit of MSJ reply").

Put simply, the Court finds that the time spent by Ms. Mitchell and Ms. Snead on this case was reasonable and necessary to the prosecution of DRTx's claim. The billing records show that Ms. Mitchell and Ms. Snead adequately explained each billing entry with proper descriptions of discrete tasks—rather than so-called block billing—and exercised billing judgment by reducing their own hours prior to submitting this fees motion.

### ii. No *Johnson* adjustment is necessary.

Although the lodestar amount is presumptively reasonable, the Court must still assess the *Johnson* factors. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) (establishing a number of factors that a Court may use to adjust an award of attorneys fees when the lodestar amount does not represent the reasonable-and-necessary fee award). Here, the Court determines that no adjustment is necessary. Many of the *Johnson* factors, including "the novelty [and] complexity of the issues, the special skill and experience of counsel, the quality of representation, and the results obtained from the litigation," are "subsumed within the initial calculation of the lodestar" and "thus cannot serve as independent bases for increasing the basic fee award." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). "Although upward adjustments of the lodestar figure based on these factors are still permissible, such modifications are proper only in certain rare and exceptional cases." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993). Neither Bishop nor DRTx request an adjustment based on any of these factors, and the Court finds no rare or exceptional circumstances that would justify such an adjustment.

The four remaining *Johnson* factors are not implicated in the lodestar analysis: (1) the preclusion of other employment by the attorney due to acceptance of the case; (2) the

undesirability of the case; (3) the nature and length of the professional relationship with the client; and (4) awards in similar cases. *Johnson*, 488 F.2d at 714, 718, 719. None of these factors require an adjustment in this case. And Bishop does not argue otherwise. *See* Dkt. No. 37.

      **C.**    **Bishop's remaining arguments are meritless.**

Bishop asserts two additional grounds for denying or limiting DRTx's fees request. First, he points out that DRTx did not designate its attorneys as experts and objects to their affidavits on this basis. Second, Bishop provides his own affidavit—despite not designating his attorney as an expert witness in line with his own argument—to describe the amount of time defense counsel spent on the case. Neither basis persuades the Court to deviate from the well-settled lodestar analysis, and Bishop provides no authority to support his assertions.

      **i.**    **DRTx did not need to designate its lawyers as experts.**

Bishop "objects and excepts" to Ms. Mitchell and Ms. Snead's affidavits, which describe the time they expended on this case. Dkt. No. 37 at 1. Bishop interprets the Court's Scheduling Order (Dkt. No. 19) to "requir[e] the initial designation of experts November 1, 2021 [sic]." *Id.* As DRTx points out (Dkt. No. 38 at 2–3), the Court's Scheduling Order requires designation only of experts "who will testify at trial." Dkt. No. 19 at 5. Thus, DRTx's failure to disclose its attorneys as expert witnesses was not in violation of the Court's Scheduling Order. Nor does it violate Federal Rule of Civil Procedure 26, which provides that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). Again, these rules apply to expert witnesses de jure— not attorneys who are designated only for the purpose of proving up attorneys' fees post-

judgment. "Attorneys who represent parties against whom [attorneys' fees] are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject." *Wright v. Blythe-Nelson*, No. 3:99-CV-2522-D, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001) (Fitzwater, J.).

### ii. The Court finds defense counsel's affidavit unpersuasive.

Finally, Bishop asserts throughout his attorney's affidavit that DRTx has inflated its fees by simply working an unreasonable number of hours. To support this argument, defense counsel informs the Court that he has spent "a maximum of 22 hours in this case." Dkt. No. 37-1 at 2. There is certainly a disparity between the defendant's 22 attorney hours and the plaintiff's 371.6 attorney hours. *Compare* Dkt. No. 35 at 7, 12, 19 (establishing 167.7 hours for Courtney Luther, 73.10 hours for Beth Mitchell, and 130.80 hours for Lisa Snead), *with* Dkt. No. 37-1 at 2 ("I have expended a maximum of 22 hours in this case . . . .").

Bishop's argument rests on an irrelevant yard stick. The number of hours defense counsel spent on a case in which he did not prevail neither confirms nor calls into question the reasonableness of opposing counsel's hours. In any event, without previously finding that Bishop expended a reasonable number of hours on this case—an issue not before the Court—the Court cannot make any meaningful comparison. Additionally, the Court notes DRTx's high-quality briefing, which effectively laid out the controlling legal standard and was amply supported by legal authority. Effective advocacy in federal court requires time and effort—"[t]here is no excuse for [] shoddy briefing," and the Court finds that a deep-dive comparison of DRTx's and Bishop's hours would not be productive. *Williams v. City of Austin*, 170 F. Supp. 3d 939, 942 n.2 (W.D. Tex. 2016).

**4.    Conclusion**

Under Section 1988, DRTx is entitled to its reasonable and necessary costs and fees. DRTx is entitled to $545.50 in costs and reasonable and necessary attorneys' fees of $43,440.

So ordered on March 21, 2023.

 _____
 JAMES WESLEY HENDRIX
 UNITED STATES DISTRICT JUDGE